IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION FILE NO. 5:18-cv-00267

NAVIGATORS INSURANCE COMPANY,

    Plaintiff,

v.

KCHM, INC. f/k/a FDH, INC.; KCHM and Associates, Inc. f/k/a FDH Engineering, Inc.; FDH INFRASTRUCTURE SERVICES, LLC f/k/a FDH VELOCITEL; FDH INFRASTRUCTURE SERVICES, INC. f/k/a VELOCITEL, INC.; and AMERISURE INSURANCE COMPANY.

    Defendants.

**COMPLAINT FOR DECLARATORY RELIEF**

Navigators Insurance Company (hereinafter "Navigators"), by way of claim for declaratory relief, alleges and says that:

**PARTIES**

1. Navigators is an insurance company organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

2. Upon information and belief, KCHM, INC, which was formerly known as FDH, INC. (hereinafter "KCHM"), is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Raleigh, North Carolina.

3. Upon information and belief, KCHM and Associates, Inc., which was formerly known as FDH Engineering, Inc. (hereinafter "KCHM and Associates), is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Raleigh, North Carolina.

1

4. FDH Infrastructure Services, LLC, which was formerly known as FDH Velocitel (hereinafter "FDH Velocitel"), is a limited liability company organized and existing under the laws of the State of Delaware, is authorized to conduct business in the State of North Carolina, and has its principal place of business in Raleigh, North Carolina. Upon information and belief, "FDH Velocitel is now FDH Infrastructure Services, LLC" and "FDH Infrastructure Services" was "formerly FDH Velocitel."

5. FDH Infrastructure Services, Inc., which was formerly known as Velocitel, Inc. (hereinafter "Velocitel"), is a corporation organized and existing under the laws of the State of Delaware, is authorized to do business in North Carolina, and has its principal place of business in Raleigh, North Carolina. Upon information and belief, Velocitel, Inc. did business as FDH Velocitel.

6. Amerisure Insurance Company (hereinafter "Amerisure") is a foreign insurance company organized and existing under the laws of the State of Michigan with its principal place of business in Farmington Hills, Michigan. Amerisure is authorized to, and upon information and belief does, conduct substantial business in North Carolina. Amerisure has appointed the North Carolina Commissioner of Insurance as its agent on whom legal process may be served.

## JURISDICTION AND VENUE

7. This is a civil action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, arising out of an insurance contract dispute between the plaintiff and defendants as to the obligation, if any, of Navigators to pay defense costs incurred by, or on behalf of, KCHM, KCHM and Associates, FDH Velocitel, and Velocitel (hereinafter collectively the "FDH Entities") prior to the exhaustion of the limits of the underlying insurance policy issued by Mid-Continent Casualty Company, and to defend the FDH

Entities against certain ongoing lawsuits although Navigators is exhausting the limits of its policy in settlement of two lawsuits.

8. An actual controversy exists between Navigators and the FDH Entities as well as Amerisure concerning alleged insurance coverage for the FDH Entities under a commercial excess insurance policy Navigators issued to S&S Communication Specialists, Inc.

9. The amount in controversy is in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and this Court has jurisdiction over this action under 28 U.S.C. § 1332 by virtue of the diversity of citizenship between plaintiff and all defendants.

10. Venue for this case appropriately lies in the United States District Court for the Eastern District of North Carolina in that the action arises out of the costs associated with defending the FDH Entities who have their principal place of business in Raleigh, Wake County, North Carolina.

### **FACTS**

**The Despard Tower Collapse**

11. KCHM is a construction management firm. In 2013, KCHM (who was then known as FDH, Inc.) was hired by SBA Communications Corporation (hereinafter "SBA Communications") to serve as the construction manager on a project to modify a cell phone tower in Clarksburg, West Virginia, known as the Despard Tower. The modifications to the Despard Tower were structural and were intended to increase its ability to support additional telecommunications equipment.

12. Upon information and belief, KCHM and Associates is an engineering firm who contracted with SBA Communications to design the improvements to the Despard Tower.

13. KCHM subcontracted with S&S Communications Specialists, Inc. (hereinafter "S&S") to perform the construction work needed for the project. A true and accurate copy of the Master Subcontractor Agreement for Construction Services between KCHM and S&S is attached hereto as **Exhibit A**.

14. Despard Tower was a 340 foot, three-sided steel structure supported partially by guywires. Steel beams known as "diagonals" ran diagonally from one leg of the tower to an adjacent leg and provided internal support for the tower. The planned structural modifications included removing certain diagonals and replacing them with stronger diagonals.

15. On February 1, 2014, an S&S field crew went to work on the Despard Tower. Upon information and belief, their planned work that day included removing and replacing diagonals. While the S&S field crew was working on the Despard Tower on February 1, 2014, the Despard Tower collapsed, killing two S&S employees (Kyle Kirkpatrick and Terry Lee Richard) and injuring two other S&S employees (Randal McElhaney and Jerry Hill).

16. When the Despard Tower collapsed, it hit and damaged an adjacent cell phone tower causing it to also collapse. When the adjacent cell phone tower fell, it struck and killed a volunteer firefighter on the scene, Michael Garrett.

17. Seven lawsuits were filed as a result of the Despard Tower collapse. The lawsuits are captioned as follows:

   a. <u>Faith Garrett, Administratrix of the Estate of Michael Garrett v. S&S Communications Specialists, Inc., et al.</u> The case was filed in the Circuit Court of Harrison County West Virginia (the "Garrett Action");

b. <u>Randal McElhaney v. SBA Communications, Corp., et al.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-204 (the "McElhaney Action");

c. <u>J. Ron Wright, in his capacity as Administrator of the Estate of Terry Lee Richard, Jr. v. SBA Communications, Corp., et al.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-205 (the "Wright Action");

d. <u>Jerry Hill v. SBA Communications, Corp., et al.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-206 (the "Hill Action");

e. <u>Kyle Kirkpatrick v. SBA Communications, Corp., et al.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-207 (the "Kirkpatrick Action");

f. <u>True Knowledge Ministries, Inc. v. SBA Communications, Corp., et al.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-24 (the "TKMI Action");

g. <u>SBA Telecommunications, LLC, as successor in interest to SBA Telecommunications, Inc. and SBA Towers, LLC v. S&S Communications, Inc. and FDH Engineering, Inc.</u>, U.S. District Court for the Northern District of West Virginia, No. 1:15-CV-228 (the "SBA Action");

Those seven actions will be collectively referred to as the "Tower Collapse Actions."

18. KCHM is a defendant in all of the Tower Collapse Actions except the SBA Action. KCHM and Associates is a defendant in all of the Tower Collapse Actions. FDH Velocitel is a defendant in all of the Tower Collapse Actions except the SBA Action.

## The Insurance Policies

19. Amerisure issued to FDH, Inc. (now known as KCHM) a commercial general liability policy and an umbrella policy. Upon information and belief, those policies provide for a defense and indemnification of the FDH Entities with combined limits of at least $11,000,000, which were in force on the date of the subject tower collapse.

20. Mid-Continent Casualty Company issued a commercial general liability insurance policy to S&S for the policy period of November 1, 2013 to November 1, 2014 with limits of $1,000,000 each occurrence, which was in force on the date of the subject tower collapse. A true and accurate copy of the Mid-Continent policy is attached hereto as **Exhibit B**.

21. Navigators issued a Commercial Excess Liability Insurance Policy to S&S for the policy period of November 1, 2013 to November 1, 2014, which was in force on the date of the subject tower collapse. The Navigators excess policy has limits of $5,000,000 each occurrence and a $5,000,000 general aggregate limit. A true and accurate copy of the Navigators policy is attached hereto as **Exhibit C**.

22. The FDH Entities and Amerisure contend that the FDH Entities qualify as additional insureds under the policies Mid-Continent and Navigators issued to S&S for purposes of the claims against the FDH Entities in the Tower Collapse Actions. Mid-Continent denied that the FDH Entities qualify as additional insureds under its policy, denied that S&S had a contractual duty to defend the FDH Entities, and refused to defend the FDH Entities against the Tower Collapse Actions.

23. Upon information and belief, Amerisure has provided and is continuing to provide counsel to defend the FDH Entities in the Tower Collapse Actions.

### The Mid-Continent and Navigators Policy Limits Are Exhausted By Settlement of The Garrett Action and The SBA Action

24. The Garrett Action was settled in mediation on April 17, 2018. Mid-Continent agreed to pay its $1,000,000 limit in settlement of the Garrett Action, which payment would exhaust the limits of its policy. Navigators agreed to pay $3,250,000 of its $5,000,000 limit in settlement of the Garrett Action on behalf of all people and entities claiming coverage under the Navigator's policy, including, but not limited to, the FDH Entities. Of the $3,250,000 to be paid by Navigators, $1,199,500.00 was to be paid in cash and $2,050,500.00 was to be paid to fund an annuity. These payments were made with the full knowledge and consent of the all people and entities who claimed coverage under the Mid-Continent and Navigators policies.

25. Settlement of the Garrett Action was subject to court approval. A hearing to approve the settlement was held on June 6, 2018. The Court approved the settlement. At that June 6, 2018 hearing, Mid-Continent paid its $1,000,000 limit by presenting a check to Garrett and Navigators paid its $1,199,500.00 cash contribution by presenting a check to Garrett. Navigators has already paid the remaining $2,050,500.00 to fund an annuity that is a component of the settlement of the Garrett Action.

26. The SBA Action was settled in mediation on April 17, 2018. Navigators agreed to pay its remaining policy limits, which were $1,750,000.00, in settlement of the SBA Action and on behalf of all people and entities claiming coverage under the Navigators policy, including, but not limited to, the FDH Entities.

27. The FDH Entities had full knowledge and provided their full assent to Navigators settlement of the Garret Action and the SBA Action.

28. Navigators' payments in settlement of the Garrett Action and the SBA Action will fully exhaust the limits of the Navigator's policy in settlement of some, but not all, of the Tower

7

Collapse Actions. The FDH Entities have acknowledged that the Navigators policy limits will be exhausted by its payments in settlement of the Garrett Action and the SBA Action.

29. The FDH Entities have agreed not to seek any coverage from Navigators for any claim asserted against the FDH Entities in the TKMI Action, but have reserved rights in the settlements of the Garrett Action and the SBA Action.

30. Upon information and belief, the commercial general liability and umbrella policies issued by Amerisure to one or more of the FDH Entities have not been exhausted and Amerisure continues to defend and has an ongoing obligation to defend the FDH Entities in the remaining Tower Collapse Actions.

31. The FDH Entities and Amerisure have contended, and Navigators denies, that Navigators had a duty to defend the FDH Entities against the Tower Collapse Actions prior to exhaustion of the Mid-Continent policy.

32. The FDH Entities and Amerisure contend, and Navigators denies, that despite Navigators' agreement to pay its policy limits in settlement of the Garrett Action and the SBA Action, and thus exhaust the Navigators policy, that Navigators has an ongoing duty to defend the FDH Entities in the McElhaney Action, Wright Action, Hill Action, and Kirkpatrick Action.

## COUNT I

### (The FDH Entities Do Not Qualify As Additional Insureds Under The Navigators Policy Unless They Are Additional Insureds Under The Mid-Continent Policy)

33. The preceding paragraphs are incorporated as though fully restated herein.

34. The Navigators policy provides in Section II – Who Is An Insured as follows:

> The WHO IS AN INSURED section of the "controlling underlying insurance" is made part of this policy. Any person or organization that is an insured in "controlling underlying insurance" is an insured in this policy to the same extent.

35. "Controlling underlying insurance" is defined in the Navigators policy as "the policy listed in the Schedule of Underlying Insurance shown in the Declarations, or its renewal or replacement, …"

36. The Navigators policy Schedule of Underlying Insurance lists the Mid-Continent policy as underlying insurance:

> 4. Underlying Insurance
>
> | Coverage/Carrier/Policy Number | Policy Term | Limits |
> |---|---|---|
> | … | | |
> | General Liability | X Occurrence  Claims Made | |
> | Mid-Continent Casualty Company | 11/01/2013 to 11/01/2014 | $1,000,000 Each Occurrence |
> | 04-GL-000888641 | | … |
> | | … | $2,000,000 General Aggregate |
> | | | … |
> | … | | |

37. Because the Mid-Continent policy constitutes "controlling underlying insurance" as defined by the Navigators policy, the FDH Entities do not qualify as additional insureds under the Navigators policy unless they also qualify as additional insureds under the Mid-Continent Policy.

38. Mid-Continent has denied that the FDH Entities qualify as additional insureds under the Mid-Continent policy. Mid-Continent and the FDH Entities never resolved that dispute on the merits.

9

39. Should it be determined that the FDH Entities do not qualify as additional insureds under the Mid-Continent policy, the FDH Entities also do not qualify as additional insureds under the Navigators policy and, therefore, Navigators would have no duty to defend or indemnify the FDH Entities against any of the Tower Collapse Actions.

## COUNT II

### (Navigators Has No Duty to Defend The FDH Entities)

40. The preceding paragraphs are incorporated as though fully restated herein.

41. The Navigators policy Schedule of Underlying Insurance lists the Mid-Continent policy as underlying insurance:

4. Underlying Insurance

| Coverage/Carrier/Policy Number | Policy Term | Limits |
|---|---|---|
| … | | |
| General Liability | X Occurrence  Claims Made | |
| Mid-Continent Casualty Company | 11/01/2013 to 11/01/2014 | $1,000,000 Each Occurrence |
| 04-GL-000888641 | | … |
| | … | $2,000,000 General Aggregate |
| | | … |

…

42. The Navigators policy provides in pertinent part as to its obligations in relation to underlying insurance as follows:

…

**SECTION I — COVERAGE**

**1. Insuring Agreement**

   **A. Excess Liability**

10

1. We will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" to which this insurance applies. This insurance applies only if:

    a.  the "loss" is caused by an "event" that takes place in the coverage territory;

    b.  the "loss" occurs during the "policy period;" and

    c.  the "controlling underlying insurance" applies to the "loss."

2.  **If an aggregate limit of "controlling underlying insurance" is exhausted by the payment of judgments or settlements to which this insurance applies**, or would have applied but for the amount of the damages, **this insurance will apply in place of the "controlling underlying insurance" until we have paid our applicable Limits of Insurance.**

3.  When paragraph 2. above applies, ending the "controlling underlying insurance" obligations to investigate and settle claims or defend suits against the insured, we have the right and duty to investigate claims and defend suits which seek damages to which this insurance applies. **Our right and duty to defend end when we have paid our applicable Limits of Insurance**.

4.  **When paragraph 2. above does not apply, we have the right, but not the duty, to participate in the investigation or settlement of any claim or the defense of any suit against any insured**.

…

**2. Exclusions**

The EXCLUSIONS sections of the "controlling underlying insurance" are made part of this policy. If an inconsistency or contradiction exists between an Exclusion of this policy and an Exclusion of the "controlling underlying insurance" the Exclusion of this policy will apply.

However, in no case will coverage be excluded by the "controlling underlying insurance" and not excluded by this policy.

This insurance does not apply to any liability:

1.  to which "controlling underlying insurance" does not apply;

…

SECTION V. – DEFINITIONS

The DEFINITIONS section of the "controlling underlying insurance" are made part of this policy, and apply to words or phrases used in this policy provided that words or phrases in quotations in this policy will have the meaning given them in this policy.

…

"Controlling underlying insurance" means the policy listed in the Schedule of Underlying Insurance shown in the Declarations, or its renewal or replacement, …

(emphasis added).

43. The Mid-Continent policy issued to S&S constitutes "controlling underlying insurance" as defined by the Navigator's policy.

44. Even if the FDH Entities qualify as additional insureds under the Navigators policy, Navigators had no duty to defend the FDH Entities unless and until the limits of the Mid-Continent policy were exhausted by payment of a judgment or settlement.

45. Even if the FDH Entities qualify as additional insureds under the Navigators policy, Navigators has no duty to defend the FDH Entities in the Tower Collapse Actions because Navigators has agreed to pay the applicable limits of its policy in settlement of one or more claims and such payments are being made with the knowledge and consent of the FDH Entities.

46. The limits of the Mid-Continent policy were not exhausted by payment of a judgment or settlement until Mid-Continent paid its entire $1,000,000 limit in settlement of the Garrett Action on June 6, 2018.

47. Navigators has agreed to exhaust the $5,000,0000 limit of its policy in settlement of the Garret Action and the SBA Action. The FDH Entities had full knowledge of and assented to the payment by Navigators of its $5,000,000 limits in settlement of the Garrett Action and the SBA Action. The FDH Entities have acknowledged that Navigators' payments in settlement of the Garret Action and the SBA Action will exhaust the available limits of the Navigators policy.

48. Navigators did not previously have, does not now have, and will not in the future have a duty to defend the FDH Entities in any of the Tower Collapse Actions because Navigators has agreed to pay its applicable policy limit, thus exhausting the Navigators policy, promptly upon payment by Mid-Continent of its limits in settlement of the Garret Action and the SBA Action.

**PRAYER FOR RELIEF**

WHEREFORE, Navigators prays unto the Court as follows:

1. That this Court enter judgment declaring that Navigators does not have any duty to defend the FDH Entities against any of the Tower Collapse Actions to the extent that the FDH Entities do not qualify as additional insureds under the Mid-Continent Policy.

2. That this Court enter judgment declaring that Navigators did not previously have, does not now have, and will not in the future have a duty to defend the FDH Entities in any of the Tower Collapse Actions because Navigators is exhausting its policy limits in payment of settlements of the Garret Action and the SBA Action promptly after payment by Mid-Continent of its policy limits;

3. That defendants pay the costs of this action; and

4. That the Court grant Navigators such other and further relief as to it may seem just and proper.

13

This the 11th day of June, 2018.

YOUNG MOORE AND HENDERSON, P.A.

BY: */s/ Walter E. Brock, Jr.*
　　WALTER E. BROCK, JR.
　　N.C. State Bar No. 8195
　　walter.brock@youngmoorelaw.com
　　ANDREW P. FLYNT
　　N.C. State Bar No. 41238
　　Andrew.flynt@youngmoorelaw.com
　　Post Office Box 31627
　　Raleigh, North Carolina 27622
　　Telephone (919)782-6860
　　Facsimile (919) 782-6753
　　*Attorneys for Defendant Navigators*
　　　*Insurance Company*

568-3/4471145